IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRAVIS CASON, #356421, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-11-3089 |
| OFC LODGSON, | * | |
| OFC CAPLE, | | |
| OFC GARBASTEIN, | * | |
| LPN NURSE, | | |
| OFC KEEFER, and | * | |
| OFC PENROD. | | |
| | * | |
| Defendants | | |

***
**MEMORANDUM**

Plaintiff Travis Cason, a State of Maryland prisoner who is self-represented, filed a complaint against Correctional Officers Adam Lodgson, Brandon Caple, Jeffrey Garbastein,[1] Paul Penrod, and Officer Keefer,[2] as well as "LPN Nurse," defendants, pursuant to 42 U.S.C. § 1983, asserting claims of excessive force in violation of the Eighth Amendment to the United States Constitution. ECF 1. Defendants have filed a "Motion To Dismiss Or, In The Alternative, Motion for Summary Judgment," ECF 14, along with a legal memorandum and nine exhibits. *See* ECF 14-1 to ECF 14-10. Cason was provided notice of his rights regarding the pending motion, but did not file a response. *See* ECF 15; *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975).

No hearing is needed to resolve the issues presented in this case. *See* Local Rule 105.6.5. For the reasons that follow, I shall treat the motion as one for summary judgment and grant it.

---

[1] Plaintiff has misspelled the surname. The record reflects that this defendant's name is spelled "Grabenstein."

[2] I have not found a reference in the Complaint or in the exhibits to an Officer Keefer.

**FACTUAL BACKGROUND**

**A. Complaint**

Cason, an inmate at the State of Maryland's North Branch Correctional Institution ("NBCI"), alleges that he was assaulted by the correctional officer defendants and then denied medical help by an unidentified nurse. According to Cason, the events at issue began on October 6, 2011, when Officer Grabenstein informed him that only top bunk inmates were scheduled for recreation time that day. Cason alleges, in part:

> I informed [Officer Grabenstein] that I was on the top Bunk[.]  Ofc. Garbastein then stated that it's not me it's my cell buddy thats [sic] on the rec list[.]. [H]e [Officer Grabenstein] was neglecting me to come out my cell for rec.  So I let my cell buddy go out and when the door was secured I then pursued to ask in the handcuffs that I need to see a Lt. at my cell A.S.A.P. because its [sic] no reason why I should not get my rec. He kept asking me that if I was refusing to give up the handcuff if so he will be coming with help to take them that's when Ofc Penrod, Ofc. Lodgson, Ofc. Caple, was called to assist Ofc. Garbastein, once my cell door opened Ofc.Caple, came in and grab my neck …. They placed a leash around my handcuff and pulled me to the door to take the handcuff off  they then removed the handcuff and turned and place [sic] my arm in the slot they started bending my wrist and arm that when [sic] Ofc. Lodgson burst pepper spray and left me in the cell for about 2 minutes before they took me out to get medical treatment.

ECF 1, Complaint, Part III.

Cason adds that, once inside the medical unit, he was struck several times by Officers Caple, Penrod, Lodgson, and Grabentein. *See id*. He claims he was hit "more than once" by Officer Caple, who then ordered the other officers to hit him "some more." Complaint, Part III, attachment. According to plaintiff, he was hit with the mace on his mouth and his front teeth became loose as a result. Several minutes later an "unknown nurse" entered the room and provided medical treatment to Cason. Plaintiff states that she was not in the room when he was struck by the officers. *See id*.  Cason complains the nurse refused to provide him with pain

medication, and told him that he looked fine. However, he was provided with a shower. Cason claims that photographs were taken. *See id*. He seeks compensatory and punitive damages in the amount of $350,000. ECF 1, Complaint, Part IV.

### B. Defendants' Exhibits

Lieutenant Michael Oates, of the Maryland Division of Correction, investigated the incident and issued a Memorandum to Major Thomas Mellot, dated October 6, 2011. *See* Exhibit 1 (Oates Investigation Report). He promptly met with Cason in the medical unit.[3] The report states that, at approximately 5:54 p.m. (presumably on October 6, 2011), Officer Grabenstein advised Cason that he was not on the recreation list and needed to return to his cell. Cason became "belligerent and argumentative." Exhibit 1 at 1; Exhibit 9 at 1 (Officer Grabenstein's Use Of Force Incident Report). Officer Grabenstein ordered Cason to return to his cell and told him that he would check the recreation list. *See id*. Cason returned to his cell, but then refused to allow his handcuffs to be removed. Exhibit 1 at 1; Exhibit 2 (Notice of Inmate Rule Violation and Disciplinary Hearing, signed by Officer Caple, at 1); Exhibit 9 at 1.

Officers Penrod, Logsdon, and Caple arrived to assist. Exhibit 1 at 1; Exhibit 2 at 1; Exhibit 9 at 1-2. Cason's cell door was opened and Officers Caple and Penrod partially entered the cell and attached an extension tether to Cason's handcuffs. The officers pulled the tether through the slot in the cell door, moving Cason towards the door as it started to close. *See id*. Before the cell door could close, however, Cason stuck his left foot in the doorway, preventing the door from closing. Exhibit 1 at 1; Exhibit 2, at 1; Exhibit 9 at 2. Cason then removed his foot

---

[3] The report and other records repeatedly misspell plaintiff's surname as "Casson." Although not sued, Sgt. Brian Marsh appears to have been involved in the underlying events and was investigated.

3

and the door closed. *See id.*

Officers Logsdon and Caple held Cason's arms while Officer Grabenstein removed the handcuffs. *See id.* With his arms free, Cason reached out of the slot and grabbed Officer Caple's duty belt.[4] Cason refused to release Officer Caple. Exhibit 1 at 1; Exhibit 2 at 1; Exhibit 9 at 2. Officer Logsdon then applied one burst of pepper spray through the slot in the cell door. *See id*; *see also* Exhibit 3, Declaration by CO II Paul Penrod, at ¶ 4; Exhibit 4, Declaration by CO II Adam Logsdon, at ¶ 4; Exhibit 5, Declaration by CO II Brandon Caple, at ¶ 4. Cason released his grip, was handcuffed and escorted to the prison medical department for pepper spray exposure. Exhibit 1 at 1; Exhibit 2 at 1-2; Exhibit 9 at 2. He "continued resisting the officers all the way to the medical room." Exhibit 1 at 1; *see also* Exhibit 2 at. 2.[5]

At the medical facility, Cason was examined and treated by Jodi Maiers, R.N., for pepper spray exposure. Exhibit 1 at 2; Exhibit 2, at 2; Exhibit 6 at 1(Medical Report), Exhibit 9 at 2. Nurse Maier found "no pain, tenderness, signs of injury, bleeding" to Cason's face, ears, nose, or mouth. Exhibit 6.[6]

While in the medical unit, Cason was interviewed by Lieutenant Oates. Cason told Lieutenant Oates that Officer Grabenstein had hit him. Exhibit 1 at 2. Further, Cason said the officers had "set him up" and that he wanted to see his lawyer and "call my people." *Id.* Cason refused to lift his head for digital photographs. *See id*; *see also* Exhibit 7 (Photographs of Cason). Cason told Lieutenant Oates he wanted to write an Inmate Statement.

---

[4] The duty belt held handcuffs, pepper spray, a handcuff key and a radio. Exhibit 2 at 1.

[5] Cason indicates that the medical unit is a "blind spot" for the video camera. Complaint, Part III, attachment.

[6] Cason's unsupported allegation of inadequate care by an unnamed "LPN Nurse" fails to state a claim upon which relief can be granted and is subject to dismissal on this basis.

Cason was then escorted to the shower for decontamination. Exhibit 1 at 2; *see also* Exhibit 6. Once in the shower, Cason became belligerent, refused to exit the shower, and repeatedly stated that he wanted to call his "people" and his lawyer. Exhibit 1 at 2. He refused to permit photographs. *Id*. In light of Cason's excessive force allegations, Lieutenant Oates proceeded to notify Major Thomas S. Mellott. *See id*. Major Mellott notified the Internal Investigation Unit, advised Detective Forsythe of Cason's allegations, and directed Lieutenant Oates to continue to investigate Cason's claims. *See id*.

At approximately 9:40 p.m., Lieutenant Oates returned to the shower to talk to Cason. Lieutenant Oates told Cason that he would be placed in temporary housing for the night and receive an adjustment for his behavior. Cason asked to speak to counsel. Lieutenant Oates told him to speak to his Housing Unit Manager the next day. Additional photographs were taken of Cason because the first set was blurry. *See id*. Afterwards, Cason was placed in temporary housing, where he was given an Inmate Statement form and a pen.

Meanwhile, Lieutenant Oates interviewed Cason's cell mate, Jermanie Johnson, in the Housing Unit Sergeant's Office, and asked whether he had witnessed what had happened. Johnson answered, "I didn't see nothing." Exhibit 1 at 2.

On October 7, 2011, Cason told Lieutenant Oates that he had completed his Inmate Statement but wanted to keep it. Lieutenant Oates inquired why, and Cason said that he had not put any witnesses on his adjustment ticket. Lieutenant Oates then located and re-served the adjustment ticket on Cason so that he could add the names of his witnesses. When he asked Cason again for his statement, Cason replied, "I didn't write one." *Id*. Cason explained: "I don't want to." *Id*. Lieutenant Oates inquired whether Cason knew how to write and Cason responded

5

in the affirmative. *See id*.

Lieutenant Oates continued his investigation by reviewing "all reports and a copy of the video retrieved from the digital recorder from the housing unit." Exhibit 1 at 3. He "determined that the level of force used was appropriate for the situation" and found not credible Cason's claims that he was hit. *See id*. Additionally, he noted that Cason had "no marks anywhere," other than a scratch on his left forearm, consistent with the force used to remove handcuffs. *Id*. He also found video from eight different cameras, "with no evidence of excessive force being used." *Id*.

After reviewing Lieutenant Oates's investigation report, the Use of Force Incident Report, and the archived video from October 6, 2011, Major Mellott concluded that the "involved staff had a need for force and applied it correctly to maintain control of a violent offender that posed a threat to harm of their person." Exhibit 8 (Use of Force Packet Cover Sheet, Memo from Major Mellott to Chief of Security Keith K. Arnold, dated October 6, 2011).

## STANDARD OF REVIEW

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be

treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the

---

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[8]

Plaintiff has not filed an opposition to the motion. Nor has he filed an affidavit under Rule 56(d).[9] In my view, it is appropriate to address the defendant's motion as one for summary

---

[8] Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

[9] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not

judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

In resolving the motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

---

always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.' " *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Supreme Court has held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, __ U.S. __, ___, 130 S.Ct. 1175, 1176 (2010).

Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761. In a claim for excessive application of force, a claimant must meet a heavy burden to satisfy the subjective component—that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted). To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind," *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In determining whether prison officials have acted maliciously and sadistically, a court should balance: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the responsible officials, and; 4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. To be sure, not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. *See Hudson v. McMillian*, 503 U. S. 1, 6 (1992). In *Wilkins*, the Supreme Court stated: "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." 130 S.Ct. at 1178 (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). But, it is a factor in applying and reviewing the Eighth Amendment analysis. *Id*. Thus, a court must look at "the nature of the force rather than the extent of the injury." *Id*. at 1176.

Prison officials are charged with balancing competing governmental interests, such as the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. *Whitley*, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. *Hudson*, 503 U.S. at 6. Thus, in excessive force cases, the subjective component is measured by the same standard as the objective: "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.

The Fourth Circuit has closely scrutinized the use of pepper spray and mace in correctional facilities, concluding that, when used appropriately, it is not in and of itself a per se

violation of a prisoner's constitutional rights. *See Williams*, 77 F.3d at 763. The Fourth Circuit has said that

> mace can be constitutionally used in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate." A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

*Id.* (internal citations omitted).

However, "it is necessary to examine the 'totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment,' " *id.* (quoting *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir.1984)) (alterations in *Williams*), as "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.' " *Williams*, 77 F.3d at 763 (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984)).

In this case, the uncontroverted facts show that Cason refused to allow corrections officials to remove his handcuffs; he was repeatedly warned by officers that he needed to comply; he was placed in a handcuff tether to pull him toward the slot in his cell door; and his hands were held as the handcuffs were removed through the cell door slot. Notably, Cason neither mentions in his Complaint nor disputes defendants' assertion that he blocked the cell door from closing or that, after the handcuffs were removed, he grabbed Officer Caple's duty belt and refused to let go. Cason's conduct disrupted prison administration and security, and the application of a one-second burst of pepper spray was a measured, reasonable response to an escalating situation with serious safety implications. After the pepper spray was administered,

Cason complied with the officers' directions and was promptly escorted to the medical unit for decontamination. In sum, the evidence, viewed in a light most favorable to Cason, does not support an inference that defendants acted maliciously and sadistically, with the intent to cause harm to Cason.

Cason's allegations that he was repeatedly struck in the face after reaching the medical facility and before the nurse arrived are more troubling.[10] There is no assertion that Cason posed a safety threat while in the medical unit; he was in handcuffs and had just been exposed to pepper spray. Cason's assault claims, however, are unsubstantiated by the evidence. As noted, the medical examination conducted immediately after the alleged beating found no evidence of pain, tenderness, signs of injury, or bleeding to his face, ears, nose, or mouth. The photographs taken after the claimed incident do not reveal physical injuries consistent with an assault. Further, Cason failed to submit a statement, despite repeated opportunities to do so.

Although the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," the absence of a serious injury is not irrelevant. *Wilkins*, 130 S.Ct. at 1178. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ... the case should not go to the jury." *Whitley*, 475 U.S. at 322. "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'" *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998)

---

[10] Curiously, none of defendants' affidavits addresses Cason's allegation of assault in the medical unit.

(quoting *Whitley* 475 U.S. at 322). Under these circumstances, Cason has failed to meet this standard and summary judgment will be entered in favor of defendants.

## CONCLUSION

For the foregoing reasons, the court will, by separate Order, grant the defendants' motion for summary judgment and close this case.

July 27, 2012  /s/
Date  Ellen L. Hollander
      United States District Judge